Good morning. May it please the Court, my name is Elisa Thomas and I represent the petitioner in this case. You could put that microphone a little closer to you and speak right up. Is this good? That's great. Thank you. At this time I would like to reserve three minutes rebuttal. Sure. This case is about to what extent a legal system will sacrifice fair process and rule of law for the sake of expediency and numbers on a tally sheet. Prejudice was in the nature of this case. The immigration court advanced Mr. Martinez's case from October 9th to July 30th, informed counsel just a couple of weeks beforehand, and then denied the continuance in motion to withdraw. Because of this, Mr. Martinez was never able to fully present his asylum case. Let me ask you a question. How long have you practiced? Immigration, 10 years. Okay. Have you ever made a motion to continue and not received a response from the immigration court, yet failed to show up on the date of the hearing? No. Me personally, I have not. Do you think that that's appropriate behavior by a lawyer? Well, we may very well have an IAC case here also, but this case is about structural error. Just imagine the situation, the same situation. I don't excuse for a moment what apparently happened here. That is, the case was originally set for October, is that right? That's true. And then it was advanced earlier to April. Yes. And counsel moved to continue, and that was denied in some pretty sharp language in the transcript from the immigration judge, but it did seem unusual that the lawyer didn't bother to show up on the morning of the advanced hearing date when they didn't know whether there had been a ruling on the motion to continue. If you look at the context as a whole, I would say that it's not really as stark as Your Honor has put forth, because I think the lawyer did request he was – the case was advanced and a notice was sent out to him three weeks before, and as soon as he got the notice, he submitted his motion for continuance, and then it was ruled on, I think, three days before he got the answer. At that point, he was scheduled for a vacation. He had another court hearing out of town. He – I mean, Your Honor is right in the sense that he did not appear because he was on a faulty phone line and a log cabin and there was a lot of indiscernible sections of the record, but he was – he was present enough to make an objection to the process. And this is the problem that we have here, that my client was unable to present his asylum case because his lawyer was basically in a log cabin on a faulty phone line, and also because there was terrible animosity. You're absolutely right, Your Honor, that there was a lot of sharp words between – coming from the immigration judge. If you – if you look at the context as a whole – and I can give you the site to the record – there was this whole issue of, at the time, the immigration court was under deadlines. September 30th was the deadline. All of the cases were being rammed through the court. They had brought in outside judges on detail. This particular judge was one of these outside judges who was just there to clear the docket. This is what this case is all about. That's why I say that the – sure, there might be an IAC claim there, but fundamentally it's structural error. And actually, I could sit down now, but there's this great case, Q. B. Mukasey, that I'd like to tell you about. In your brief? Yes, it is. Okay. And I actually – it's – I'm sorry, not in the brief. I did submit a supplemental. You put in a 28-J letter? Yes. Does counsel get that? Yes. Okay. And this case is Q. B. Mukasey, and it's a 2005, I think. In any case, it was after the briefs were submitted. And what this case does is this Court set the standard for evaluating an I.J.'s denial of a continuance. And there's four factors. Importance of the evidence, unreasonableness of the immigration judge, convenience to the Court in number of continuances previously granted. So on the first factor, importance of the evidence. In this case, importance of the evidence was paramount. My client was not able to testify orally as to what his asylum case was about. Prejudice was established by the fact that Mr. Martinez was not able to present This Court in Cano, Marina, held that an applicant – and I quote directly from Cano that is in the briefs – need not explain exactly what evidence he would have presented in support of his application, and we may infer prejudice in the absence of any allegation as to what that evidence would be. The record does have many State Department country condition reports. It has Human Rights Watch articles, Amnesty International articles that show that, you know, Mexico is a – can be a very difficult place. You know, there's rampant corruption and many people are persecuted at the hands of authorities, military authorities. Unreasonableness of the immigration judge. Just as in Reyes-Melendez, where the I.J. appeared to find that Reyes's relationship with his lover offset any hardship he might suffer and his children might suffer, here the I.J. appeared to offset – sorry – appeared to find that any arbitrary deadlines of expediency offset my client's right to present his asylum case. How long has your office had this case? Well, since the first brief was filed in – oh, no, it came since after – it must be 2003. So you've had it for – your office has had it for about six years? That's correct, Your Honor. Okay. What's the claim on the merits? Can you give us a three- or four-sentence description of the claim on the merits? Yes, I think it's irrelevant, but – given this record. But my client forms a particular social group of people who would be targeted for ransom and kidnapping. He had a son who died and he received a wrongful death settlement. And this would be a case very similar to the Filipino ransom cases that this Court has ruled on. Okay. You wanted to save some time for rebuttal? I think we have the essence of your claim. You think it's structural error, but that your claim does have a claim on the merits, but if it is structural error, that's irrelevant, correct? You're right, Your Honor. So I'll just sit down. There are a couple of juicy tidbits I wanted to put in, but you're absolutely up for rebuttal. Thanks for coming in today. We'll hear from the Attorney General at this time. Good morning. Good morning, Your Honors. My name is Julie Iverson, and I represent the United States Attorney General. You know, I've been doing this for 15 years, and for about the last, what, 12 years, Judge Thomas, we've been inundated with immigration cases. And one thing I always do is to look up the grant and denial rate of the judge involved. And I look it up for Judge Vomaca. Is that how you pronounce it? I'm not sure, Your Honor. Vomaca? I'm not sure how you pronounce it, Your Honor. Is he still an immigration judge? I believe he is an immigration judge in New York, and at the time he was detailed to San Francisco. His denial rate is 95.3 percent. I've never seen a denial rate like that. Have you ever heard of an immigration judge who had a denial rate that high? Your Honor, I know that there are ranges in how many — in the denial rates of different immigration judges, but I think — He's about 40 points higher than the national average. I think there's a lot of different considerations that go into what the grant and denial rate are for each particular judge. But I think you, Your Honor, raised a good point. When you say considerations, we're talking grant or deny, right? We're just talking raw statistics. So what considerations are you talking about? I mean, you have the variations in the — I'm familiar with the statistics in San Francisco and in New York, and the grant rates are a lot higher — statistically higher than that. So what considerations do you mean? Well, I would think, Your Honor, that it would depend on the nationality of the alien, whether or not there was a criminal record. There's statistics, but I'm not sure what quantifies those statistics. But I think, Your Honor, you raised a good point that what are the merits of this particular case. And this case is about whether or not the motion for continuance was denied — reasonably denied. And here, I think that there was no good cause shown. Mr. Martinez applied for asylum basically because he feared that he would not have a job in Mexico. That's what his asylum application says. He says, I fear I won't be able to find a job, and I've been in the United States for seven years. That was the basis for his asylum claim. Can you tell us how much time elapsed between the time that a decision was made to then-counsel move to continue? Do you know that? The advancement date — the case was advanced July 3, 2005, is when the notice was sent out. Initially, the hearing had been scheduled for October 9, 2000 — 2005, I think, 2003. Initially, the hearing had been scheduled for October 9, 2003, so it would have been 28 days' notice. Counsel for — former counsel for Petitioner said that he received it about 23 days prior to the advanced hearing date. He did not file a motion to — So do I — is my math correct that five days after the notice went out, counsel moved to continue? Your Honor, no, that's not correct. On July 21st, he filed a motion to withdraw as counsel. He said that the relationship between his client and him had basically broken down and that his client also had failed to meet with him on — in April. So, actually, the motion for a continuance was not filed until 3.15 p.m., the day — two days before the hearing. What was initially filed was a motion to withdraw. And that can be found in the record. And when was then-counsel informed that the motion to continue had been denied? The motion to continue or the motion to withdraw? The motion to continue. He was informed the morning of the hearing. It was filed at 3.15 p.m., two days before the hearing. And the morning of the hearing, he received a telephone call that said that he was — that the motion was being denied. And then it appears that the immigration court made accommodations to Mr. Mayock, who was Mr. Martinez's attorney, to have him appear telephonically. And also Mr. Martinez had someone from his firm appear who was not prepared to go forward, but he appeared as — she, excuse me, appeared as a courtesy to the court. As I understand, counsel was in Reno on another case? Your Honor, in his motion to continue, he said that he would be in Reno the day before the hearing for Mr. Martinez. And he did not really elaborate. He did not say that he would be out or unable to appear the day of the hearing. And also you'll notice in the motion to withdraw that basically he doesn't put forth any good cause why he couldn't appear other than his vacation. And he said that he would not be able to prepare such a complex case for cancellation of removal and asylum, even though this asylum claim had been pending for six years and actually it's what initiated or precipitated the removal proceedings. So this asylum claim that he was not prepared to go forward on was six years old. And the cancellation claim, which there was never a qualifying relative, but the I am not sure what evidence. And he's never proffered any evidence that he would have presented. But what happened at the hearing was this, is that the counsel appeared, the associate appears at the hearing. And then he's reached by telephone. And then the judge says, well, if you're not prepared, I'm going to proceed with this without an attorney. Right? Your Honor, that's not exactly correct on how I read the record. He says, are you prepared? He does appear. Let me quote you. Are you ready to have someone sworn in? And the attorney says, I'm not prepared to proceed in this matter. If you'd like to relieve me of the representation, speak to the clients directly. That's fine. He said, you're the person who relieved yourself of representation by going out of town. He goes on. I mean, the judge never talks to the clients and says, look, I'm depriving you of your statutory right of representation because your attorney hasn't shown up. I'm not going to give you a chance to get a new lawyer. We're just going to have this hearing right now. Your Honor, but his attorney did show up. He was able to appear telephonically. And as ---- I'm talking about what happened afterwards. We all know what happened at this point. Now the attorney, the judge isn't going to hear from the attorney anymore. But he did, Your Honor, he did give the attorney the opportunity to present and to elicit testimony on the asylum claim. And the attorney said that he was not prepared to go forward. But interestingly enough, he was able to go forward to qualify him for voluntary departure, to qualify his client for voluntary departure. So he's still there. He's still participating in the removal proceeding. Basically, this case is about the denial of the motion for continuance and whether or not Mr. Martinez showed good cause to have a sixth continuance at his request. Did the immigration judge ever ask the Petitioners if they were prepared to go forward without counsel? Your Honor, he'd been ---- The answer is no, isn't it? The answer is no. There were the immigration judge did say he did not feel comfortable eliciting testimony from represented or from the client when he was represented by counsel and when his counsel had refused to have him testify. But he never asked the Petitioners, okay, here's where we are. I've denied the motion to continue. The immigration proceeding is going to go forward with or without your client's participation. Are you prepared to go forward with the hearing without a lawyer? He never did that. Well, he ---- No, Your Honor, correct. Your Honor, you are correct. He did not do that. However ---- Is he required to do that? Your Honor, he was still being represented. I believe that his attorney was still representing him. If you look at the voluntary departure qualification, it's his attorney that is asking him the questions whether or not he qualified voluntary departure. So he was still participating in the hearing. And even if he ---- You know, this is a little bit like imagine a situation where a criminal trial and the person is not prepared to go forward and the case goes forward and the proceeding results in a conviction and the immigration judge asks the lawyer who's on the telephone ---- I can't imagine this would happen, but if it did happen, do you have any comments on bail? Is the lawyer supposed to sit there and not say a word, or is he supposed to try to help out the client as best he can? Your Honor, he's supposed to try to help out the client, I think. But here he could have done that. He could ---- he was not prepared. The attorney was not prepared. There's never been an ineffective assistance made in the six years subsequent to the hearing. And further, even if this Court finds that he was deprived of a full and fair hearing and the reasonable opportunity to present evidence, there has been no prejudice established because he's at no point shown or put forth what he would have proffered, what testimony he would have presented. He might not have to exactly present what he would have done, but there's been no evidence of why he would qualify for asylum on any basis. What's your best case for a requirement that there be a showing of prejudice? Colmenar, Your Honor. In Colmenar, the alien actually put forth what he would have testified to. He didn't give the exact details, but he said if I had had the opportunity, if I hadn't had testimony cut off, I would have presented evidence about the motive of why I was targeted. So I believe that Colmenar is the best case. Thank you. We've taken you a little over your time. That's okay. Thank you. Thank you for coming in this morning. Thank you, Your Honors. Not an easy case. Counsel? No, sir. Rebuttal? Well, I'm very tempted to rest, but I did want to ---- Then why don't you? Okay. The case just argued will be submitted for decision. I want to then thank both counsel for coming in today. Very interesting case.
judges: Korman, Hawkins, Thomas